IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| KAIVEN WESLEY | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 5:14cv46 |
| BOWIE COUNTY, ET AL. | § | |

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>
<u>ON DEFENDANT DR. SHAH'S MOTION TO DISMISS</u>

The Plaintiff Kaiven Wesley, proceeding *pro se*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights during his confinement in the Bowie County Jail. This Court ordered the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. The Plaintiff's Complaint**

Wesley complains he was denied proper medical care at the Bowie County Jail for gunshot wounds he suffered. He states prior to entering the jail, he was diagnosed with a "grazed head gunshot wound" at a hospital facility. After he came into the jail, a separate and individual evaluation was supposed to have been done to determine the extent of his medical needs and whether "the initial information regarding Mr. Wesley's gunshot wounds had been properly evaluated." Had this been done, Wesley states the Defendants would have learned his injury was not a "grazed wound" but an "actual gunshot wound where a bullet had entered and exited Mr. Wesley's head."

Wesley argues the failure by the Defendants to factually evaluate the circumstances of his wound caused him to suffer extreme pain as a result of the lack of proper medical treatment. He continuously filed grievances seeking medical care; Wesley states gunshot wounds are considered serious, but there was never any reason for denying him medical care and treatment. For relief, he

1

asks for one dollar in nominal damages, $50,000.00 per defendant in compensatory damages, and $1 million per defendant in punitive damages.

## II. Dr. Shah's Motion to Dismiss

One of the named Defendants, Dr. Jagdish Shah, filed a motion to dismiss the complaint against him. Dr. Shah argued Wesley did not allege any facts showing deliberate indifference and Wesley's pleadings fail to identify Dr. Shah's involvement in his care, much less how such involvement amounted to deliberate indifference. Instead, Wesley pleaded only conclusory allegations which fail to show a plausible right to relief. Dr. Shah also invoked the defense of qualified immunity.

In response to the motion to dismiss, Wesley argued Dr. Shah made a jury demand in his answer, showing an agreement between the parties that a jury trial is requested. He asks the Court to "instruct the parties to enter proceedings to determine if a settlement is possible." Wesley states he had a bullet lodged in his lung and was prescribed a pain reliever called hydrocodone, which was never provided; instead, he was given aspirin, which Wesley claims is an example of the inadequate medical care provided.

## III. The Report and Recommendation

After review of the pleadings, the Magistrate Judge issued a Report recommending Dr. Shah's motion to dismiss be granted. The Magistrate Judge observed that Wesley's pleadings, taken as true, must raise a right to relief above the speculative level; in other words, he must plead factual content allowing the court to draw a reasonable inference that Dr. Shah is liable for the misconduct alleged. Such pleading must involve more than a sheer possibility of unlawful conduct. Ashcroft v. Iqbal, 566 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).

However, Wesley's pleadings, including his response to the motion to dismiss, failed to satisfy this standard. While he names Dr. Shah as a defendant in his lawsuit, his complaint and supporting memorandum do not otherwise mention the doctor at all. The medical records which Wesley attaches to his response to the motion to dismiss do not show Wesley was the victim of

2

deliberate indifference; on the contrary, these show he received a considerable amount of medical care, including examinations, sutures, medications, X-rays, and a CT scan. These medical records also show Wesley's gunshot wound to the head was a scalp wound with no intra-cranial injury, described by the hospital in Michigan as a "superficial scalp wound." Even considering these medical records as part of Wesley's pleadings, the Magistrate Judge stated, they did not set out a facially plausible claim against Dr. Shah. Wesley's disagreement with the medication he received did not show deliberate indifference to his serious medical needs even assuming Dr. Shah was responsible for the change in medication, which Wesley does not allege. The Magistrate Judge also concluded Dr. Shah is entitled to qualified immunity.

**IV. The Plaintiff's Objections (docket no. 46)**

In his objections, Wesley states Dr. Shah does not dispute he had other gunshot wounds, besides his head wound, and "other than the question of deliberate indifference, no dispute arises from defendant Shah that Mr. Wesley, because he had a serious gunshot wound to his head, and gunshot wounds to his lower body, that his medical needs were critical and required particular kinds of medical treatment to address those circumstances regarding plaintiff's serious medical condition." (Plaintiff's Objections, ECF TXED 5:14-cv-46, 46, 2). He asserts the Magistrate Judge's Report only discusses his head wound and states "when determining whether deliberate indifference is a factor to dismiss a defendant from the basis of a plaintiff's civil rights complaint, the court must determine if plaintiff required serious medical treatment and if so, were these needs properly met and if not, the standard of deliberate indifference to dismiss the suit has not been met." (Plaintiff's Objections, *id*., p. 2).

Wesley states gunshot wounds are considered serious, citing other cases in which persons died from gunshot wounds. He contends he had gunshot wounds in which bullets had entered his body, but these are not discussed in the motion to dismiss or the Magistrate Judge's Report. Wesley states these wounds "could have been fatal had he not received the kind of medical treatment needed while in the hospital, prior to being moved to the county jail." (Plaintiff's Objections, *id*., p. 3).

Wesley goes on to assert "there is nothing in [the] record that provides defendant's motion to dismiss should be granted because defendant Dr. Shah has not shown that plaintiff's gunshot wounds were being properly treated, as there is no record factually showing the kind of treatment that plaintiff received, was consist [sic] with all other inmates that may have received medical treatment in Bowie County, for gunshot wounds while in custody." (Plaintiff's Objections, *id.*, p. 4). He also states nothing in the record indicates any reason for taking away the medication prescribed for him in the hospital. Wesley asserts Dr. Shah "does not demonstrate that deliberate indifference did not occur." (Plaintiff's Objections, *id.*, p. 5). The Court will conduct a *de novo* review of the Report and Recommendation in light of the Plaintiff's objections.

V. Analysis

A. Deliberate indifference

In his complaint and memorandum in support, Wesley focuses on his head wound and he also refers to other gunshot wounds. On page 3 of his memorandum, he states "medical treatment which plaintiff Wesley adequately argues that he was denied, is based on a fundamental fact, that during being placed in the custody of defendant(s) care, defendant(s) failed to properly evaluate his medical circumstances regarding his gunshot wounds to his head, upper and lower body." He goes on to discuss the failure to evaluate the fact his gunshot wound to the head was not properly attended to and states the court should determine whether the defendants deprived him of proper medical treatment because they failed to adequately evaluate his head gunshot wounds. Finally, Wesley states "gunshot wounds are considered serious, and require adequate and serious medical treatment. In failing to evaluate the obvious, and depriving Mr. Wesley of medical treatment, which was clearly needed upon the facts that plaintiff had suffered from multiple gunshot wounds to the head, lower and upper body; there has never been any probable reason for denying plaintiff of health care." (Plaintiff's Memorandum, docket no. 2, p. 7).

He offers no facts showing he was the victim of deliberate indifference to his serious medical needs, much less that Dr. Shah was deliberately indifferent. He claims, in a conclusory manner, that

he was deprived of proper medical treatment. He does not point to anything Dr. Shah did or did not do. Such conclusory allegations do not allow the Court to draw a reasonable inference that Dr. Shah is liable for the misconduct alleged, nor do they state a claim for relief which is plausible on its face. Rogers v. Boatwright, 709 F.3d 403, 407 (5th Cir. 2013); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) (pleading offering only conclusions or "naked assertions devoid of further factual enhancement" are insufficient). Although Wesley contends Dr. Shah failed to show he provided proper medical care, the burden of proof rests upon him, not the defendant. Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006).

The Magistrate Judge also considered Wesley's medical records that he furnished with his response to the motion to dismiss. These records show on November 24, 2013, Nurse Humphrey contacted Dr. Shah about Wesley. She stated Wesley arrived at the facility after being released from St. Michaels where he was treated for three gunshot wounds. A bullet was intact in his right side due to being unremovable. Wesley had an intact dressing on his right side covering the chest tube removal site, and the medication orders were for Lortab (a pain medication also known as hydrocodone) and Lasix, a diuretic. Dr. Shah replied "cont all."

On November 26, Nurse Humphrey advised Dr. Shah that Wesley came to the infirmary the previous night complaining of shortness of breath. His lung sounds were clear but the right lobe had slightly decreased sounds and Wesley stated the area around the right lobe was tender to auscultation. He had also coughed up a small amount of blood. Dr. Shah ordered a chest X-ray, a complete blood count, and a Z pack of antibiotics.

The next day, Nurse Humphrey asked Dr. Shah about pain medication for Wesley and the doctor gave her an order for a pain medication called Tramadol for two weeks. Dr. Shah also stated Wesley could have 400 mg of ibuprofen until the Tramadol came in.

The following day, Wesley was brought to the infirmary by Sgt. Jefferson and officers Meredith and Austin. He was seen by Nurse Bowen, who observed a gunshot wound to his head, his upper back (possibly exiting above the shoulder) and in his lower back. Wesley had a slight

5

cough but his lungs were clear to auscultation bilaterally. Nurse Humphrey noted they were waiting on the U.S. Marshal to take Wesley for a chest X-ray. She told Wesley he could no longer have a wheelchair because he needed to be up walking around, coughing and deep breathing, and Wesley voiced understanding. He stated he was coughing up blood only in the evening and he had blood in his urine the previous night. The nurse gave him a cup for a urine sample and he voiced understanding. Nurse Bowen stated Wesley was in no apparent distress when talking to her.

The day after, November 29, Wesley was brought to the infirmary for an assessment of the wound in his side, because the dressing had apparently come off in the shower. The stitches were intact with no signs or symptoms of infection and there was no drainage of blood noted. Nurse Humphrey told Wesley to leave the site open to air, as ordered by the doctor at St. Michaels when he was discharged.

The next day, Wesley came to the medical department for a pill pass demanding to go to the emergency room. Nurse Venable told him that he was not in any distress or in a medical crisis and would not be going to the emergency room, and Wesley began yelling and demanding to see the sergeant. He then left the medical department.

On December 2, Wesley complained of pain to the back of his head and was given a dose of Tramadol. A lab draw was taken on December 4, and Wesley showed no signs of discomfort. On December 5, the sutures to his right side were removed. No drainage was noted and the site was healing. On December 15, 2013, Wesley was advised that his lab work and blood work was normal, the gunshot wound to his head was a graze, and the hospital had determined the bullet in his lung would not be removed.

All of the information in Wesley's medical records refute his claim of deliberate indifference. In fact, the records reveal Wesley received continuous medical attention. The bullet in his side was deemed unremovable by the medical personnel at the hospital before Wesley arrived at the jail, and Wesley's disagreement with this determination does not amount to a constitutional claim. Dr. Shah ordered antibiotics, blood tests, X-rays, and pain medication for Wesley. The fact Dr. Shah ordered

ibuprofen, a non-steroidal anti-inflammatory pain medication, and Tramadol, a narcotic analgesic, instead of hydrocodone, another narcotic analgesic, does not show deliberate indifference. *See, e.g.*, Burton v. Owens, 511 F.App'x 385, 2013 WL 586825 (5th Cir., February 14, 2013) (no deliberate indifference where physician substituted ibuprofen in place of narcotic analgesic called Percocet); Williams v. Bearry, 273 F.3d 1096, 2001 WL 1085197 (5th Cir., September 7, 2001) (no deliberate indifference where unit physician discontinued a narcotic called Darvocet and substituted 600 mg doses of ibuprofen); Alegria v. Pearson, 214 F.App'x 407, 2007 WL 129022 (5th Cir., January 16, 2007) (decision whether to administer Darvocet was a medical judgment, not deliberate indifference to serious medical needs).

Wesley's conclusory allegations of deliberate indifference by Dr. Shah do not allow the Court to draw a reasonable inference that Dr. Shah is liable for the misconduct alleged, nor does he state a claim for relief which is plausible on its face. Rogers, 709 F.3d at 407.

**B. Qualified immunity**

Wesley's conclusory pleadings or objections do not overcome the defense of qualified immunity. This defense shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Luna v. Mullenix, 773 F.3d 712, 718 (5th Cir. 2014).

After the defendant properly invokes qualified immunity, the plaintiff bears the burden to rebut its applicability. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). In order to abrogate a public official's right to qualified immunity, the plaintiff must show the official's conduct violated a constitutional or statutory right and the official's actions constituted objectively unreasonable conduct in the light of clearly established law at the time of the conduct in question. Id. The Fifth Circuit has stated "theory, speculation, and mere conclusory allegations" are not sufficient to discharge a plaintiff's burden of overcoming the defense of qualified immunity. Lockamy v. Dunbar, No. 10-40126, 399 F.App'x 953, 2010 WL 4272588 (5th Cir., October 29, 2010), *citing* Michalik

7

v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). Wesley has failed to meet his burden, and his objections are without merit.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 43) is ADOPTED as the opinion of the District Court, except that the Court has determined, in the interest of justice, the dismissal of Dr. Shah should be without prejudice. It is further

ORDERED that the motion to dismiss of the Defendant Dr. Shah is GRANTED, except as set out above, and the Plaintiff's claims against Dr. Shah are DISMISSED without prejudice. Dr. Shah is hereby terminated as a party to this lawsuit. Finally, it is

ORDERED that the motion of the Defendant Dr. Shah for leave to file an amended answer (docket no. 39) is GRANTED. The Clerk shall file Dr. Shah's amended answer on the docket of this cause.

**SIGNED this 4th day of August, 2015.**

                                                ROBERT W. SCHROEDER III
                                                UNITED STATES DISTRICT JUDGE